# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 3 C 5472 | **DATE** | 3/22/2004 |
| **CASE TITLE** | In re: Resource Technology Corporation vs. People of the State of Illinois | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: For all of the foregoing reasons, the decision of the bankruptcy court is affirmed, terminating the case. This is a final and appealable order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 23 2004 | |
| ✓ | Docketing to mail notices. | | | 21 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TSA | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| RESOURCE TECHNOLOGY ) | |
| CORPORATION, ) | |
| ) | |
| Debtor. ) | No. 03 C 5472 |
| ) | |
| ) | Wayne R. Andersen |
| PEOPLE OF THE STATE OF ILLINOIS, ) | District Judge |
| *ex rel.* LISA MADIGAN, Attorney General ) | |
| of the State of Illinois, ) | |
| ) | |
| Plaintiff/Counter-Defendant/Appellant, ) | |
| ) | |
| and ) | |
| ) | |
| STRYKER INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| RESOURCE TECHNOLOGY ) | |
| CORPORATION, ) | |
| ) | |
| Defendant/Counter-Plaintiff/Appellee. ) | |

DOCKETED MAR 2 3 2004

## MEMORANDUM OPINION AND ORDER

This case is before the Court on plaintiff-appellant the State of Illinois' appeal from a decision rendered by the United States Bankruptcy Court of the Northern District of Illinois in which the Honorable Eugene R. Wedoff denied the State of Illinois' motion to dismiss certain of Resource Technology, Inc.'s counterclaims against the State based on sovereign immunity. For the following reasons, the decision of the bankruptcy court is affirmed.

## BACKGROUND

Resource Technology Corporation ("RTC") is in the business of extracting methane gas from landfills. After extracting the gas from the landfills, RTC either burns off the gas it collects or, in some instances, uses the gas to power engines located at the landfills from which energy is generated and sold. RTC does not own the landfills. Rather, it contracts with landfill owners to extract the gas. On December 21, 1995, RTC entered into a contract with Stryker International, Inc. in which Stryker assigned to RTC the right to extract methane gas at the Paxton Landfill and to sell the gas in exchange for royalties.

Prior to entering into a contract with RTC, Stryker and various affiliates and related parties owning and operating the Paxton Landfill were sued by the State of Illinois to remedy numerous violations of Illinois environmental laws at the landfill. Thereafter, on August 25, 1997, Stryker notified RTC that their contract was terminated because of the parties' inability to obtain the required permits and licenses for a gas collection facility.

On May 18, 1998, the State entered into a consent order with Stryker, Paxton Landfill Corporation and the beneficial owner of the trust that owns the real estate in which Stryker admitted to certain environmental violations. The consent order required, among other things, that Stryker assign the Paxton Landfill gas rights to the State, including the option to select the party who would provide methane gas extraction services at the landfill and the right to any proceeds from the sale of methane gas at the landfill.

On November 15, 1999, an involuntary bankruptcy petition was filed against RTC pursuant to Chapter 7 of the Bankruptcy Code. On February 1, 2000, RTC consented to an order converting the case to one under Chapter 11 of the Bankruptcy Code. On December 13, 2000,

the State and Stryker filed a complaint for declaratory relief in the bankruptcy court seeking a declaration that the contract between RTC and Stryker had terminated. RTC answered the complaint and filed affirmative defenses and counterclaims against both the State and Stryker. RTC denied that the contract had terminated and alleged that the 1997 notification of termination was neither timely nor in accordance with the terms of the contract. Also, in Count IV of its counterclaim, RTC alleged conversion of property by the State. Specifically, RTC alleged that the State had taken unauthorized control of RTC's property rights in the Paxton Landfill and sought damages as a result of the alleged conversion of RTC's property.

On April 17, 2002, the bankruptcy court entered an order finding that the contract between RTC and Stryker had not terminated and remained in effect. Almost a year later, the State filed a motion for summary judgment on RTC's conversion counterclaim. On March 4, 2003, the bankruptcy court denied the State's motion for summary judgment. RTC then sought leave to file another counterclaim (Count V) against the State for tortious interference with RTC's contractual rights. The State objected on the grounds that the proposed counterclaim was untimely, would cause undue delay, and would prejudice the State. Over the State's objections, the bankruptcy court permitted RTC to file its amended counterclaim.

Then, on May 3, 2003, the State filed a motion to dismiss Counts IV and V of RTC's counterclaims on the ground that they were barred by the Eleventh Amendment principles of sovereign immunity. In response to the State's motion to dismiss, RTC argued that the State had waived any claim of sovereign immunity by voluntarily availing itself of federal jurisdiction in bringing its declaratory judgment action in the bankruptcy court and through its litigation conduct.

3

On June 26, 2003, the bankruptcy court denied the State's motion to dismiss, holding that the State had waived its sovereignty immunity in two ways. First, the State had waived its sovereign immunity by voluntarily invoking federal jurisdiction through the filing of its declaratory judgment action and by seeking a ruling on the merits of RTC's counterclaim for conversion. Second, both the Illinois Department of Revenue and the Department of Employment Security had filed proofs of claim in the RTC bankruptcy proceeding and by filing those proofs of claim, the State submitted to the bankruptcy court's jurisdiction for purposes of collecting those claims and waived its sovereign immunity as to any amounts owed by the State that could be offsets to the claims. The State now appeals the bankruptcy court's decision to deny its motion to dismiss.

## DISCUSSION

This Court has jurisdiction over the State's appeal pursuant to 28 U.S.C. § 158(a)(1), which vests a district court with jurisdiction over appeals from "final judgments, orders and decrees" of the bankruptcy court. Acting as an appellate court, we are bound to accept the bankruptcy court's findings of fact, unless they are clearly erroneous, and may only consider evidence presented before the bankruptcy court and made part of the record. *In re Home Comp. Care, Inc.*, 221 B.R. 202, 205 (N.D. Ill.1998) (citing *In re Lefkas Gen. Partners*, 112 F.3d 896, 900 (7th Cir.1997)); *In the Matter of Neis*, 723 F.2d 584, 588-89 (7th Cir.1983) (citing Fed. R. Bankr. P. 8013). However, we review any questions of law *de novo*. *In the Matter of UNR Indus., Inc.*, 986 F.2d 207, 208 (7th Cir.1993).

The issue on appeal is whether the State waived its sovereign immunity as to the counterclaims filed by RTC through its litigation conduct in the bankruptcy court. The

4

bankruptcy court initially recognized that the State acknowledges that it had waived its sovereign immunity as to its own claims in the adversary action. However, the State disputed that it had waived its Eleventh Amendment sovereign immunity as to RTC's counterclaims by bringing the declaratory judgment action in this case, or by moving for summary judgment on Count IV of RTC's counterclaim for conversion.

The bankruptcy court first considered whether the counterclaims filed by RTC were compulsory counterclaims or permissive, noting that if the counterclaims were compulsory then the State's sovereign immunity would be deemed waived. The bankruptcy court determined, and we agree, that RTC's counterclaims were permissive and therefore the State did not waive its immunity when it pursued the adversary action. In reaching this conclusion, the bankruptcy court correctly recognized that the adversary action involved resolution of whether the RTC/Stryker contract remained in effect while the counterclaims asserted by RTC arose out of the consent order entered into between Stryker and the State. Thus, the facts alleged in RTC's counterclaims arose out a separate and distinct transaction from the facts alleged in the State's adversary action, and therefore, the counterclaims were not compulsory.

Relying on *Lapides v. Board of Regents*, 535 U.S. 614, 122 S. Ct. 1640 (2002), the bankruptcy court nevertheless concluded that the State did, in fact, waive its sovereign immunity when it voluntarily invoked the jurisdiction of the federal court and pursued the litigation, including seeking a determination on RTC's counterclaim for conversion. There is a long-established body of case law that has recognized sovereign immunity waiver. As the United States Supreme Court recently stated, a "state remains free to waive its Eleventh Amendment immunity from suit in a federal court." *Lapides*, 535 U.S. at 618, 122 S. Ct. at 1643. The

5

Supreme Court further held that "'where a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment." *Id.* at 619, 122 S. Ct. 1643-44 (quoting *Gunter v. Atlantic Coast Line R.R. Co.*, 200 U.S. 271, 284 (1906)).

In the instant case, we agree with the bankruptcy court's conclusion that to allow the State to invoke sovereign immunity years after it had initiated and pursued the litigation in the bankruptcy court would undermine the integrity of the judicial system and contradict the Supreme Court's guidance in *Lapides*. In this case, the State voluntarily invoked federal jurisdiction through the filing of its declaratory judgment action and participated in extensive discovery on that action. Then, after losing the declaratory judgment action, the State filed a motion for summary judgment on RTC's counterclaim for conversion, which the bankruptcy court denied. It was only after the State unsuccessfully challenged RTC's motion for leave to file an additional counterclaim for tortious interference with RTC's contractual rights that the State, for the first time, raised the defense of sovereign immunity and sought to have the bankruptcy court dismiss RTC's counterclaims for conversion and tortious interference.

We agree with the bankruptcy court's conclusion that the State cannot avail itself of the federal court's jurisdiction, litigate its position and then attempt to cloak itself in the protection of sovereign immunity after it repeatedly lost on its claims. Indeed, recent case law has highlighted courts' reluctance to recognize sovereign immunity when it is invoked only after a state learns that it may receive an adverse ruling on its claim. *See Ku v. Tennessee*, 322 F.3d 431, 432-35 (6th Cir.), *cert. denied*, 124 S. Ct. 325 (2003) (holding that sovereign immunity had been waived when the state raised the issue for the first time in a motion to stay pending appeal after

the district court had ruled against the state); *In re Bliemeister*, 296 F.3d 858, 861 (9th Cir. 2002) (finding that the state had waived its sovereign immunity by seeking summary judgment on the merits before raising the immunity issue).

Similarly, we agree with the bankruptcy court's holding that the State also waived its defense of sovereign immunity by filing proofs of claim in the bankruptcy court. In *Gardner v. New Jersey*, 329 U.S. 565, 67 S. Ct. 467 (1947), the United States Supreme Court held that by filing a proof of claim in a bankruptcy case, a state waives its sovereign immunity at least with respect to the adjudication of the claim and to the debtor's assertion of any objections to the claim. 329 U.S. at 574, 67 S. Ct. at 472. As the Supreme Court recognized in *Gardner*:

> It is traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide by the consequences of that procedure.... When the State becomes the actor and files a claim against the fund it waives any immunity which it otherwise might have had respecting the adjudication of the claim.

*Id.* at 574, 67 S. Ct. at 472.

In this case, the Illinois Department of Revenue and the Illinois Department of Employment Security filed proofs of claim against RTC in the bankruptcy proceedings seeking approximately $5 million. In filing these proofs of claim, the Illinois Department of Revenue and the Department of Employment chose to protect the State's right to collect these claimed debts. In doing so, these agencies submitted the State to the jurisdiction of the bankruptcy court and waived sovereign immunity for the State in the bankruptcy proceeding as to any amounts owed by the State that could offset the State's proofs of claim. *See In re Straight*, 143 F.3d 1387,

7

1390-91 (10th Cir. 1998) (holding that a proof of claim filed by one state agency in a bankruptcy proceeding served as a blanket waiver for the state in that proceeding).

Relying on *Gardner*, the bankruptcy court reasoned that by filing proofs of claim and seeking the benefits and protections offered to creditors in bankruptcy court, the Illinois Departments of Revenue and Employment Security waived the State's sovereign immunity as to any amounts owing by the State that could be offsets to their proofs of claim. Thus, because RTC's counterclaims for damages stand as potential set-offs to the State agencies' proofs of claim, the State cannot claim sovereign immunity from RTC's counterclaims.

## CONCLUSION

For all of the foregoing reasons, the decision of the bankruptcy court is affirmed, terminating the case. This is a final and appealable order.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: March 22, 2004